UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FILIBERTO CHAVEZ,<br>Defendant. | Case No. 1:17-cr-00198-JLT-SAB-2<br><br>ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 |

## I. INTRODUCTION

Filiberto Chavez is a federal prisoner proceeding *pro se* on a 28 U.S.C. § 2255 motion seeking to vacate, set aside, or correct his sentence on grounds that counsel was ineffective during pretrial (Ground One), trial (Ground Two), and sentencing (Ground Three). (Docs. 701, 722). The Court motion is **DENIED** and the Court **DECLINES** to issue a certificate of appealability, for the reasons discussed below.

## II. BACKGROUND

Chavez and seventeen others were named in a criminal complaint alleging drug trafficking, sex trafficking, and/or illegal firearms offenses. (Doc. 1). Chavez was represented by retained counsel Shrayberman. (*See* Docs. 84, 104). Chavez was later charged in a six-count second superseding indictment along with one other defendant. (Doc. 367). As relevant here, Chavez was charged with Count One Conspiracy to Distribute and to Possess with Intent to Distribute a mixture

containing 50 grams or more of Methamphetamine [21 U.S.C. §§846, 841(a)(1)]; Count Two Distribution of a mixture containing 50 grams or more of Methamphetamine [21 U.S.C. §841(a)(1)]; Count Three Possession with Intent to Distribute a mixture containing 50 grams or more of Methamphetamine [21 U.S.C. §841(a)(1)]; Count Four Conspiracy to Engage in Interstate Transportation for Prostitution [18 U.S.C. §§ 371, 2421(a)]; and Counts Five and Six Use of a Facility of Interstate Commerce to Promote Prostitution [18 U.S.C. §1952(a)]. Chavez pleaded not guilty. (Doc. 370). On May 9, 2019, Chavez was found guilty on all Counts following a jury trial. (Doc. 458).

The presentence investigation report calculated the guideline range of 360 months to life based on an offense level of 37 (including leadership role and career offender enhancements) and a criminal history category of VI. (Sealed Doc. 513 at 7, 17, 33). The probation officer recommended 400 months on the drug counts and 60 months on the prostitution counts to run concurrently. (*Id*. at 33). On September 30, 2019, the Court sentenced Chavez to 400 months in prison and 60 months supervised release but held judgment in abeyance to allow the government to review a prior conviction that served as predicate for career offender status. (*See* Docs. 537, 538; Sealed Doc. 513 at 17).

On October 7, 2019, the Court considered the corrected PSR that removed a prior felony drug conviction disputed by the defense, relieved Chavez of career offender status, and calculated the offense level at 34, and with the criminal history category of IV, this resulted in a guideline range of 210 to 262 months. (Doc. 574 at 3). Defense counsel argued for 210 months (*id.* at 5), while the government argued for 262 months (*id*. at 4). The Court reduced Chavez's sentence to 250 months in prison and 60 months supervised release and entered judgment thereon. (*Id*. at 13; *see also* Docs. 541, 542).

Chavez appealed and argued that his sentence was substantively and procedurally unreasonable and violated Federal Rule of Criminal Procedure 32. (Doc. 547); *see also United States v. Chavez*, 19-10374. The Ninth Circuit affirmed the sentence. *United States v. Chavez*, 2021 WL 5917593 (9th Cir. Dec. 15, 2021). The Circuit panel rejected Chavez's claims that his sentence was substantively unreasonable on grounds that (1) the district court failed to consider the disparity

between his sentence and those of his co-defendants, and (2) the district court engaged in impermissible double counting under the sentencing guidelines. (*Id.*). The panel pointed to facts that Chavez was an influential gang member who chose to proceed to trial foregoing any acceptance of responsibility reduction, and that Chavez did not point to facts of double counting. (*Id.*). The panel also rejected Chavez's claim that his sentence was procedurally unreasonable. The panel, reviewing for plain error given Chavez's failure to object on procedural grounds, noted the sentencing Court explained the sentence as corrected prior to entry of judgment. (*Id.*). The panel also noted the sentencing Court ruled on Chavez's objections to the PSR and thus complied with Rule 32. (*Id.*). The United States Supreme Court, on October 3, 2022, denied Chavez's petition for a writ of certiorari. *Chavez v. United States*, 143 S. Ct. 176 (2022).

## III. STANDARD OF DECISION

"A federal prisoner challenging the legality of detention generally must do so by a motion pursuant to 28 U.S.C. § 2255." *Scaggs v. Ciolli*, 2023 WL 1879461, at *1 (9th Cir. February 10, 2023) (citing *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006)). Under § 2255, a prisoner in federal custody under sentence imposed by a federal court, may collaterally attack the validity of his conviction or sentence by filing a motion to vacate, set aside or correct the sentence in the court that imposed the sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Section 2255 also enumerates the grounds upon which a sentencing court may grant the federal prisoner relief: "[u]pon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] . . . the court was without jurisdiction to impose such sentence, or [3] . . . the sentence was in excess of the maximum authorized by law, or [4] [the sentence] . . . is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023), *abrogated on other grounds by Fernandez v. United States*, 146 S. Ct. 1292, 1302 (2026) (quoting *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999)) ("Section 2255 grants a prisoner in custody the right at any time to bring a motion to vacate, set aside or correct the sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law. . . .").

A successful § 2255 motion requires the federal prisoner to demonstrate the existence of an

error of constitutional magnitude that "had a substantial and injurious effect or influence on the guilty plea or [ ] jury's verdict" and show the error resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Section 2255 relief is only warranted where a movant shows the asserted "fundamental defect . . . inherently result[ed] in a complete miscarriage of justice." *United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.")

"Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief); *Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of the § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely conclusory and without support in the record).

## IV. DISCUSSION

Chavez raises several grounds for relief based upon counsel's alleged lack of preparation and legal and factual errors that prevented him from pleading guilty, presenting a reasonable defense at trial and sentencing, and realizing a more favorable outcome. (Docs. 701, 722, 770). As explained below, Chavez's asserted grounds are conclusory, refuted in the record, and not a basis for relief.

### A. Ground One: Ineffective Assistance of Counsel Prior to Trial

#### 1. Investigation and Development of the Trial Defense

Chavez claims that counsel failed reasonably to investigate the case, review discovery, develop defense options, calculate sentencing exposure, and discuss such matters with him. Ineffective assistance of counsel claims may be heard on collateral review, even if a defendant could have but failed to bring those claims on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504-05, 509 (2003); *see also United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003).

To prevail on claimed ineffective assistance of counsel, a defendant must demonstrate that his

attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* The law governing ineffective assistance of counsel claims is clearly established. *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 687.

First, "deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 688). The defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See Strickland*, 466 U.S. at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). There is a strong presumption that counsel's performance fell within the "wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689; *Quintero-Barraza*, 78 F.3d at 1349; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

The second part of the *Strickland* test requires a movant to show that counsel's conduct resulted in prejudice. *Strickland*, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Summerlin v. Schriro*, 427 F.3d 623, 640 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694); *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003) (same). "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between S*trickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case." *Richter*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." *Id.*

Chavez claims that counsel failed reasonably to advise him of the charged offenses and elements; the government's case and burden; the plea and defense options; the possible sentencing guideline calculations and outcomes; and a recommended defense. (*See* Doc. 722 at 11, 19-20). In particular, Chavez claims that counsel did not show him the discovery and errantly advised him that the government's case was supported only by "a couple of phone calls" and that he need not worry because "we will win." (Doc. 722 at 3, 20). Chavez claims that "at no point prior to trial in my criminal case did [counsel] discuss with me what my defense would be at trial[.]" (Doc. 722 at 19). Chavez claims that he was unaware of the true weight of government's case against him. (*Id*.). Chavez claims that he chose to proceed to trial because he trusted counsel's assurances that "we will win" the case and there is "nothing to lose" by going to trial because the guideline range would remain 109 to 135 months as stated in the government's proffered plea agreement regardless of the trial outcome. (Doc. 722 at 3, 11, 19-20).

These conclusory and self-serving allegations made with knowledge of the trial result are refuted by counsel's declaration and cannot be reconciled with the record supporting counsel's averments that: he evaluated the government's evidence and discussed with Chavez matters of voir dire, jury instructions, motions in limine, potential defense witnesses, potential cross-examination of government witnesses, potential defenses, and the pros and cons of Chavez testifying. (Sealed Doc. 796 at 25-35).

Moreover, the record reflects that Chavez was advised of the charges and sentencing exposure at his September 7, 2017, initial appearance - including a maximum of 40 years on the offense charged in Count One, 20 years on the offense charged in Count Three, and 5 years on the offenses charged in Counts Five and Six. (Doc. 592 at 38-39). Chavez also was present with counsel at arraignment on the second superseding indictment where he was also advised of the charges and his rights. (Doc. 370).

Counsel avers that on numerous occasions he reviewed with Chavez the disclosed discovery and discussed strategy, plea negotiations, sentencing considerations and estimates, and possible legal challenges and defenses. (Sealed Doc. 796 at 25-35) Counsel reports that he reviewed with Chavez the charges and elements including as to conspiracy, the jury instructions, the government's

evidence, and its burden of proof beyond a reasonable doubt, and that Chavez understood these matters. (Sealed Doc. 796 at 25-35).

Chavez claims that due to a protective order in the case (i.e. Doc. 380), counsel was forced to summarize evidence against him, rather than show him the evidence. (Doc. 722 at 3). But counsel states unequivocally this was not the case. According to counsel, he showed Chavez the documentary discovery loaded on counsel's iPad and discussed it with him. (Sealed Doc. 796 at 25-35). Counsel's filings in the case support this. (*See* Docs. 404, 407, 410, 424, 462); *see also United States v. Woods*, 2020 WL 2062175, at *7 (E.D. Cal. Apr. 29, 2020) (citing *Gaughan v. United States*, 2006 WL 2798155, at *13 (N.D. Ind. Sept. 28, 2006)) ("Gaughan cites no authority indicating that counsel had a duty to provide Gaughan with access to or copies of discovery materials[.]").

Counsel's case filings further reflect the discovery and discussions with Chavez regarding the defense theory including witness contact information and the possibility Chavez would testify. For example, counsel filed a witness list and motions to transport the incarcerated witnesses using information provided by Chavez. (*Id.*; *see also* Docs. 360. 398, 399, 400, 408). Counsel joined in and filed proposed jury instructions including a "mere presence" instruction supporting the trial defense agreed to by Chavez. (*See* Docs. 404, 407, 410, 462; Sealed Doc. 796 at 26). Counsel also filed motions in limine to exclude and limit evidence. (Doc. 424).

Counsel asserts also that he discussed the government's plea offer with Chavez at length and on multiple occasions, providing Chavez with the plea agreement for him to consider. (Sealed Doc. 796 at 25-35; *see also* section IV A 2, post). For example, counsel told Chavez the government had enough evidence to convict him; there were no winning suppression issues; and that he would do more time if he chose not to take a plea. *(Id.*). As discussed more fully below, these plea related averments are supported by counsel's contemporaneous correspondence with the government and memorialized in counsel's correspondence with Chavez during the plea process. Notably, Chavez himself conceded "he likely did not have a strong defense argument to make." (Doc. 722 at 13). Counsel told Chavez that the decision to go to trial or plead guilty was his. (*Id.*). Chavez chose to go to trial.

In sum, Chavez's has not overcome counsel's presumed competence in matters of

investigation and development of the trial defense. Notably, Chavez does not provide any details or aspects of the trial defense that remained uninvestigated and undeveloped. Counsel, on the other hand has supported a reasonable investigation and trial defense based upon Chavez's belief the government's witnesses would not testify against him, but in his favor, and a theory of attacking the weight of the government's evidence. Moreover, Chavez's conclusory averments that counsel assured him of trial success and a relatively short sentence belie counsel's contrary averments and supporting proffer and Chavez's own concession that he had no strong defense to the charges. (*See also* section IV A 2, post).

Assuming arguendo counsel's allegedly deficient conduct, Chavez does not point to facts showing a reasonably probability of a different outcome at trial absent counsel's errors. *See Strickland*, 466 U.S. at 691-94. For example, Chavez does not identify any unpresented evidence or defense, unknown to him during the pretrial phase, that suggests a reasonably probable of a different trial outcome. *See Richter*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693) ("[T]he likelihood of a different result must be substantial, not just conceivable."). Chavez's concession that the government's case was overwhelming suggests he reviewed the government's case and that there was no unpresented evidence or viable defense.

The unfavorable outcome at trial is not alone a basis to find counsel ineffective. *See Rincon v. United States*, 2025 WL 3150690, at *2 (C.D. Cal. July 16, 2025) (citing Strickland, 466 U.S. at 689) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

**2. Plea Negotiation, Plea versus Trial, Plea Rejection**

Chavez claims that counsel failed reasonably to advise him relative to the plea process and the government's plea offer, a possible straight up plea, and the plea versus trial decision.

The two-part *Strickland* test applies to ineffective assistance of counsel claims relating to the plea-negotiation process because under the Sixth Amendment criminal defendants are entitled to effective counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162, 168 (2012) (the Sixth Amendment right to the effective assistance of counsel extends to the plea-

bargaining process, including the decision whether to accept or reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. Trial counsel also must adequately inform the defendant so that he has "the tools he needs to make an intelligent decision" regarding the plea offer. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).

Counsel's advice is deficient when "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." *Id.* at 880 (quoting *United States v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992)). "[T]he question is not whether counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *Turner*, 281 F.3d at 880 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Counsel is not required to "discuss in detail the significance of a plea agreement," or "strongly recommend the acceptance or rejection of a plea offer." *Turner*, 281 F.3d at 881.

In order to show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." *Cooper*, 566 U.S. at 163. In cases where trial counsel's defective advice caused the defendant to reject a plea offer and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe that under the judgment and sentence that in fact were imposed."). *Id.* at 164. This is true even where the defendant subsequently received a fair trial. *Id.* at 166; *see also Premo v. Moore*, 562 U.S. 115, 125 (2011) ("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage.").

The Ninth Circuit has stated: "If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in

the client's best interest." *United States v. Lester*, 2023 WL 113788, at *6 (E.D. Cal. Jan. 5, 2023) (citing *Leonti*, 326 F.3d at 1117). Still, defense counsel is not "required to accurately predict what the jury or court might find." *Turner*, 281 F.3d at 881; *see also McMann*, 397 U.S. at 771 ("[U]ncertainty is inherent in predicting court decisions."). As the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." *Turner*, 281 F.3d at 881. The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.

Chavez claims that he wanted to plead guilty, but counsel told him the government would offer only a take it or leave it deal that required him to "stipulate to having two prior felony drug convictions – which he explained to [counsel] was not the case."[1] (Doc. 722 at 2-3, 18-20). Chavez claims that counsel assured him the defense would prevail at trial and that in any case he had nothing to lose by going to trial because a sentencing guideline range of 109 to 135 months applied regardless of plea or trial. (*Id*.). Chavez revisits his above allegations that counsel failed reasonably to discuss with him the strength of the government's case and its burden of proof and Chavez's true sentencing exposure. (Doc. 701 at 4; Doc. 722 at 3, 9-10). Chavez claims that absent counsel's allegedly deficient conduct, he would not have proceeded to trial. (Doc. 722 at 11, 19-20; *see also* Doc. 770 at 3).

The Court finds that Chavez's conclusory and self-serving allegations are refuted by counsel's declaration and cannot be reconciled with the record supporting counsel's declaration. Counsel documents that he negotiated a favorable plea offer at Chavez's behest, moving the government from its initial 120 month offer to 108 months. (Sealed Doc. 796 at 26-38; *see also* Doc. 764-3 at 1-9, 17-18). Counsel presented the plea offer to Chavez including its factual basis, provided detailed estimated sentencing guideline calculations, and went over the plea offer with Chavez extensively and thoroughly on multiple occasions - leaving the plea agreement with Chavez for him

---

[1] Chavez appears to walk this assertion back in his habeas declaration, averring that "looking back now, Chavez even wonders if the United States required him to stipulate to the two prior drug convictions in the Plea Agreement[.]" (Doc. 722 at 10).

to consider. (Sealed Doc. 796 at 26-38). Counsel explained the 108-month offer as the low end of counsel's estimate of the guideline range given the 50-150 grams of 80% purity or higher methamphetamine seized; a 2-point upward adjustment for leadership role; and a 3-point reduction for acceptance of responsibility. (*Id.*).

Counsel advised Chavez to accept the plea offer and that the offer was more favorable than a straight up plea with no deal. (Sealed Doc. 796 at 26-38). Counsel advised Chavez that he likely would not do better than the current offer under which he would be home "relatively soon." (*Id.*). Counsel advised Chavez that should he proceed to trial, and if the evidence presented at trial was the same as discussed during the plea process, he likely was looking at a total offense level of 32 (i.e. 30 plus 2 for leadership role) and a criminal history category of III, with a guideline range of 151 to 188 months on the drug offenses, increasing to 188 to 235 months or higher if additionally convicted of pimping. (*Id.*). Counsel also advised Chavez that the sentencing judge would be less lenient should he lose at trial versus accepting responsibility. (*Id.*). Counsel memorialized this advice in a letter to Chavez during the plea process. (Sealed Doc. 796 at 37-38; *see also* section IV B 2, post). Contemporaneously, Chavez knew from arraignment the charges against him and his sentencing exposure of up to 40 years. (*See* Docs. 38, 84; *see also* Doc. 367-1 at 3-4; Doc. 370). Chavez also knew that he had no strong trial defense. (*See* Doc. 722 at 13).

Chavez's assertion that his potential career offender status factored into the plea offer is entirely unsupported in the record and refuted by it. The plea agreement did not reference and was not predicated upon Chavez conceding any predicate career offender felony. (*See* Doc. 764-3). Relatedly, Chavez himself observes the guideline range in the plea agreement "was well below that of a career offender guideline." (Doc. 722 at 10).

Even if Chavez could show that counsel assured him of a win at trial and an estimated sentencing exposure at trial no greater than 135 months (both of which counsel denies), this does not overcome counsel's presumed competence on that basis. *See e.g.*, *Turner*, 281 F.3d 879-81 (citing *McMann,* 397 U.S. at 771) ("[U]ncertainty is inherent in predicting court decisions. Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision."); *see also* section IV B 2 post);

*Turner*, 281 F.3d at 880 (*Strickland* requires that counsel's advice must be "so incorrect and so insufficient that it undermined [defendant's] ability to make an intelligent decision about whether to accept the [plea] offer."); *cf. Day*, 969 F.2d at 40, 43-44 (counsel ineffective where he misrepresented the maximum sentence and classification as career offender).

To be sure, Chavez contested any leadership role and enhancement. Still, counsel notes that on multiple occasions he discussed the role enhancement issue with Chavez on the facts of the case. (*See* Sealed Doc. 796 at 26-38; *see also* Doc. 764-3 at 3-4). These facts suggest that Chavez was a target of the government's investigation (Doc. 1 at 8); co-defendants trafficked methamphetamine and prostitutes under him (*id.* at 13); and Chavez negotiated drug and prostitution deals. (*Id*. at 71-72, 84-92, 95-97; *see also* Doc. 571 at 160-67; Doc. 572 at 44-47, 54-75, 128-44). The corrected PSR reflects as much. (*See* Sealed Doc. 513 at 15-16).

Chavez asserts that counsel failed reasonably to advise him regarding a possible straight up plea, which according to Chavez would have preserved an objection to career offender status. (Doc. 722 at 11, 19-20). But counsel avers that he did discuss with Chavez the pros and cons of a straight-up plea. (*See* Sealed Doc. 796 at 31). In any event, Chavez has not made any proffer that competent counsel would have pursued a straight up plea when a favorable plea agreement was on the table. Nor has Chavez made a proffer that career offender status factored into the plea process, as discussed above.

In sum, Chavez has not pointed to facts sufficient to overcome counsel's presumed competence in relation to the plea process. *Strickland*, 466 U.S. at 689 ("[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Chavez's  noted "[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James*, 24 F.3d at 26; *see also United States v. Mazzei,* 2026 WL 1194920, at *4 (D. Haw. May 1, 2026) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal. . . ."); *Turner, 281 F.3d at 881 (citing United States v. Allen,* 153 F.3d 1037, 1041 (9th Cir.1998)) (self-serving statements alone are insufficient to establish constitutional violations because otherwise "every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the

defendant's later claim that had his counsel better advised him, he would have accepted the plea offer."). As above, the fact Chavez realized an adverse outcome at trial relative to the plea offer is not alone sufficient to support deficient performance under *Strickland*. (*See* Doc. 722 at 20); *Strickland*, 466 U.S. at 689.

Assuming arguendo that counsel acted deficiently as alleged, Chavez has not pointed to facts showing prejudice in the plea process. Chavez claims that "had I known the weight of the evidence against me, the elements that United States was required to prove at trial in my criminal case and/or the full extent of my sentencing exposure - I would have either accepted the United States' plea offer or pled guilty without the benefit of a written plea agreement[.]" (Doc. 722 at 20; *see also* Doc. 770 at 4, 11). But the record shows Chavez rejected the plea in hopes of a better plea deal or prevailing at trial. (*See* Doc. 764-3 at 3-4; Sealed Doc. 796 at 26-38). Chavez has not demonstrated any reasonable probability that he would have accepted the government's proffered plea deal given the government's refusal to remove the role enhancement. (*See Id.).* For example*,* Chavez rejected the plea deal even though it acknowledged his disagreement with the role enhancement and reserved to him the right to argue against it. (Doc. 764-3 at 30).

This is not a case like *United States v. Kwan*, upon which Chavez relies. (*See* Doc. 770 at 4, citing *Kwan*, 407 F.3d 1005 (9th Cir. 2005) *opinion amended on reh'g*, 2005 WL 1692492 (9th Cir. July 21, 2005), *abrogated by Padilla v. Kentucky*, 559 U.S. 356 (2010)). The *Kwan* court found counsel's affirmative misrepresentation regarding the immigration consequences of a guilty plea to bank fraud to be deficient under *Strickland.* 407 F.3d at 1015. (9th Cir. 2005). Here, Chavez has not shown that his rejection of the plea agreement was in reliance upon any misrepresentation by counsel.

Finally, Chavez's assertion that a plea deal would have led to an outcome less severe than the 250 months he received at trial is mere speculation. (*See Strickland*, 466 U.S. at 694; *see also Cooper*, 566 U.S. at 164 ("[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that . . . the defendant would have accepted the plea [offer] . . . and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed [after trial]."); *see also Michaels v. Davis*,

51 F.4th 904, 941 (9th Cir. 2022) (same). Here, the plea agreement provided only a non-binding estimated sentencing guideline range on charges under which Chavez faced a potential 40 years. (Doc. 764-3 at 16-17; *cf.* Doc. 770 at 4).

**B. Ground Two: Ineffective Assistance of Counsel During Trial**

**1. Pretrial Preparation**

Chavez's revisits his claim of pretrial IAC discussed above. (*See* Doc. 701 at 5; Doc. 722 at 12-13, 19; Doc. 770 at 7). The claim remain unavailing for the reasons stated.

**2. Presentation of the Defense**

Chavez's claims that counsel made a series of errors at trial. (Doc. 722 at 3-4, 12-13; Doc. 770 at 12, 14). Applying the IAC standard set out above, the Court finds that Chavez's asserted errors are unsupported by facts and authority and refuted by counsel's habeas declaration and the record supporting counsel's declaration. The errors Chavez asserts are discussed in turn, below.

***a. Failure to Seek Severance***

Chavez asserts that counsel erred by failing to seek severance of the prostitution counts resulting in unspecified prejudice. (Doc. 701 at 5). However, an indictment may charge a defendant in separate counts with 2 or more offenses "if the offenses charged - whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Court[s] should construe Rule 8 . . . broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Thomas*, 61 F. Supp. 3d 1221, 1226 (D.N.M. 2014), *aff'd in part*, 849 F.3d 906 (10th Cir. 2017) (quoting *United States v. Bagby,* 696 F.3d 1074, 1086 (10th Cir.2012)).

To provide relief for defendants in instances where broad joinder of claims would risk undue prejudice, Rule 14 provides that "the court may order separate trial of counts . . . or provide any other relief that justice requires." *Id.* citing Fed. R. Crim. P. 14(a). The "[D]efendant bears a heavy burden of showing real prejudice from the joinder of the [ ] counts." *Id.* "[A] defendant fails to meet his burden where: (1) [t]he two counts were separate and distinct, and the evidence presented at trial was not too confusing or unfairly overlapping; (2) "[t]he offenses took place on different dates at

different locations, and different witnesses and evidence were presented on each count; and (3) the case for each count was strong enough on its own." *Id.*

Chavez does not identify any basis for misjoinder. Nor does Chavez make any proffer of prejudice. This claim is unsupported by any factual analysis and legal authority raising deprivation of a federal right, and lacks merit. *See Gonzales v. Spearman*, 2018 WL 3769828, at *7 (E.D. Cal. Aug. 7, 2018) (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)) ("[T]he Supreme Court has held that "[I]mproper joinder does not, in itself, violate the Constitution."). Particularly so here, in that the counts for drug and prostitution were separated and charged different dates and locations; the evidence was not overlapping or confusing; and neither count relied upon the other. Moreover, the jury was instructed that their verdict on one count should not control their verdict on any other count. (Doc. 462 at 22). Ultimately, the decision to sever "rests within the discretion of the district court." *Thomas*, 61 F. Supp. 3d at 1226.

Here, counsel was not deficient by failing to take a futile action. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996); *see also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance."). Chavez has not overcome counsel's presumed competence. *See e.g., Coleman v. Swarthout*, 2013 WL 2156551, at *5 (E.D. Cal. May 17, 2013), *aff'd sub nom. Coleman v. Sisto*, 591 F. App'x 597 (9th Cir. 2015) ("*Strickland* deference presupposes that defense counsel's conduct was the result of a tactical or strategic decision.").

***b. Late Arrival at Court***

Chavez asserts that counsel erred by arriving late to Court on the first day of trial, resulting in admonishment outside jury's presence. (*See* Doc. 571 at 4). Counsel concedes that he arrived 45 minutes late on that occasion, but Counsel explains that his delay was due to a stop by the jail to pick up Chavez's street clothes so to avoid any adverse jury reaction to Chavez's jail attire. (Sealed Doc. 796 at 33). Chavez does not point to facts or authority suggesting counsel acted unreasonably.

In any event, Chavez fails to show that counsel's late arrival had any obvious or appreciable effect on the outcome of the trial. Even if the jury had been aware of counsel's late arrival – which

occurred outside their presence – any effect on the verdict is purely speculative. Notably, the jury was instructed that statements of counsel are not evidence. (*See* Doc. 462 at 5).

***c. Waiver of Opening Argument***

Chavez asserts that counsel erred by waiving opening argument. The record reflects that counsel reserved opening statement. (Doc. 571 at 92). Chavez's isolated assertion untethered to the facts and circumstances of the case or legal authority and does not show incompetence. *See United States v. LeChabrier*, 2016 WL 7426117, at *20 (E.D. Cal. Dec. 22, 2016), *report and recommendation adopted,* 2017 WL 2629711 (E.D. Cal. June 19, 2017) ("[T]he timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel."); *see also United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985) (same). Chavez has not overcome the presumption that counsel acted reasonably in deferring opening statement. Particularly so here, as counsel acted pursuant to the defense agreed to by Chavez: a defense of challenging the sufficiency of the government's case after its presentation. Additionally, Chavez does not make any proffer that counsel's conduct was prejudicial under *Strickland*, but merely speculates.

***d. Failure to Suppress***

Chavez asserts that counsel failed unreasonably to challenge the government's surveillance and wiretap evidence. However, the assertion lacks relevant detail including the evidence and basis for challenge. As discussed above, counsel reasonably investigated the government's case including evidentiary issues. (*See* section IV A 1, ante; Sealed Doc. 796 at 25-35). Counsel discussed these matters with Chavez and advised him that there was no basis for suppression. (*Id.*). Additionally, Chavez does not explain how counsel's failure to challenge unspecified evidence creates a reasonable probability of a different trial outcome but offers only speculation.

***e. Failure to Impeach Government Experts***

Chavez asserts that counsel failed unreasonably to impeach government experts including as to the quantity and purity of the seized methamphetamine. (Doc. 701 at 7; Doc. 722 at 12-13). However, the assertion lacks relevant detail and basis for challenge.

The record shows that Chavez merely speculates. Counsel cross-examined government witnesses including as to the forensic methods used. (*See* Doc. 571 at 108-110, 142-46, 153-54, 169-77; Doc. 572 at 9, 17-24, 27, 31-34, 41-42, 53-58, 75-94, 144-63). Particularly, counsel cross-examined the government's expert chemist who analyzed the seized methamphetamine and found 113.1 grams of 100% pure methamphetamine. (Doc. 573 at 14-18). Counsel explored scale calibration currency regarding the weight. (Doc. 573 at 17-18). Though counsel did not question the expert as to her purity conclusion, the record reflects that she utilized color testing, gas chromatography, mass spectrometry, and infrared spectroscopy using nuclear magnetic resonance to determine the drug's purity. (Doc. 573 at 14-17). Chavez does not explain how counsel fell short by not challenging these scientific methodologies. Nor does Chavez contend the chemist was not an expert in the field. It follows that Chavez fails to make any proffer that counsel's allegedly deficient conduct raises a reasonable probability of a different trial outcome.

***f. Failure to Present a Defense in Chief***

Chavez asserts that counsel failed reasonably to present a defense case in chief. (Doc. 701 at 7; Doc. 722 at 12-13). But Chavez's defense of choice was implemented by counsel though it evaporated as the trial progressed. (*See e.g*., Doc. 572 at 48; 97, 108-14; Doc. 573 at 10, 20; Sealed Doc. 796 at 28-29). Notably, the proposed defense witnesses became unavailable, and Chavez chose not to testify. In conversation with counsel, Chavez agreed that there was nothing more to put before the jury. (*See* Sealed Doc. 796 at 26, 29; Doc. 572 at 108-14; Doc,. 573 at 4-5, 10). Even still, counsel moved for acquittal under Federal Rules of Criminal Procedure 29 after the government rested. (Doc. 573 at 3-4). It follows that Chavez fails to make any proffer that counsel's allegedly deficient conduct raises a reasonable probability of a different trial outcome.

***g. Ineffective Closing Argument***

Chavez asserts that counsel gave an ineffective closing argument. (Doc. 722 at 3-4, 12; Doc. 770 at 12, 14). Chavez points to counsel's summation to the jury that "they should find reasonable doubt because when the government witnesses testify, especially an expert testifies, that witness . . . is biased." (Doc. 722 at 4 citing Doc. 573 at 405). However, matters of argument are particularly within counsel's strategic discretion. *See United States v. Ubah*, 2009 WL 3806256, at *10 (E.D.

Cal. Nov. 12, 2009), *report and recommendation adopted*, 2010 WL 503133 (E.D. Cal. Feb. 8, 2010) (citing *Strickland,* 466 U.S. at 690) (tactical framing of closing argument given the evidence in this case did not support a claim of ineffective assistance of counsel).

The record shows that counsel's closing argument challenged the government's case including the credibility, reliability, and weight to be given government witness testimony - arguing the evidence did not support the charges beyond a reasonable doubt. (Doc. 573 at 50-63). Counsel's closing argument was consistent with the noted trial defense applied to the evidence presented at trial. (*Id*.). For example, in addition to arguing that government witnesses gave testimony biased toward the government, counsel argued the government failed to establish the amount of methamphetamine attributable to Chavez. (*Id*.). Counsel argued the government failed to establish Chaver had control over the prostitutes and that any act of prostitution occurred. (*Id*.). Counsel argued the government presented inflammatory evidence. (*Id*.). There is no sufficient showing that this argument constituted ineffectiveness.

***h. Counsel Conceded Custodial Status***

Chavez asserts that counsel mistakenly conceded his custodial status to the jury. Counsel agrees he made the statement once during trial. (Sealed Doc. 796 at 34; *see also* Doc. 571 at 9). However, counsel avers that Chavez's custodial status otherwise was obvious to the jury (*id*.), and that there is no reason to believe the jury considered it during the trial (*id*.). The Court finds that Chavez has not argued much less shown any reasonable probability of a different outcome absent this minor misstep. Particularly so, as the jury was instructed on the presumption of innocence. (Doc. 462 at 3, 18).

In sum, the Court finds the alleged trial phase errors considered individually and cumulatively did not deny Chavez a fair trial and reliable verdict, and were not prejudicial. There is no cumulative error because there is no individual error to cumulate, for the reasons stated. *See United States of America v. Jose Jesus Carbajal*, 2026 WL 2409987, at *10 (E.D. Cal. Aug. 18, 2026) (citing *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007)) (quoting *Strickland*, 466 U.S. at 696)) (there cannot be cumulative error where there is no individual error to cumulate).

///

**C. Ground Three: Ineffective Assistance of Counsel During Sentencing**

**1. PSR Errors**

Chavez claims that counsel failed reasonably to advise him on the PSR and object to it. (Doc. 701 at 7; Doc. 722 at 13-14; Doc. 770 at 8-11). The Court, applying the IAC standard set out above, finds that Chavez's asserted errors are unsupported by facts and authority and refuted by counsel's habeas declaration and the record supporting counsel's declaration. Chavez's asserted errors are discussed in turn, below.

Chavez's assertion that counsel deficiently investigated and advised him on the sentencing defense lacks necessary detail, is refuted by the habeas declaration of counsel and the record supporting that declaration. (*See* section IV A 1, ante).

Chavez's assertion that counsel failed reasonably to object to the PSR's career offender and sentencing guideline calculations is refuted on the factual record. Counsel objected informally and formally to the PSR including its references to uncharged gang and firearms involvement, evidence not proven in court, leadership role enhancements, career offender status, errors in guideline calculations, mitigation, and alleged sentencing disparities with certain co-defendants. (*See* Sealed Doc. 513-1; Doc. 522). Notably, counsel in his objections argued for a non-career offender sentencing guideline range of 210 to 262 months, which is the range provided to the sentencing Court pursuant to the corrected PSR. (*See* Sealed Doc. 513-1 at 4; Doc. 574 at 13; *see also* Doc. 722 at 4).

Counsel, in his objections filed prior to correction of the PSR, argued for a downward variances pursuant to 18 U.S.C. § 3553 to 168 months given mitigating evidence of "[Chavez's] age, criminal history, family situation and lack of any violence in his past and current case." (Doc. 522 at 11 internal pagination). As noted, the career offender status error was corrected by the Court before entry of judgment to reflect an offense level of 34 and a criminal history category of IV with a guideline range of 210 to 262 months. (Doc. 574 at 3-13). Counsel argued for the low end and the government argued for the high end. (*Id.*). The Court sentenced Chavez within the guidelines to 250 months. (*Id.*).

Chavez declined to make any statement at sentencing. (*See* Doc. 570 at 6). Chavez did not

tell the sentencing Court of any concern or error with the sentencing guideline range when provided the opportunity to do so. Particularly, Chavez made no mention of his claim that the plea agreement's sentence guideline range applied following trial. Instead, Chavez confirmed his review of the PSR with counsel and that he had no questions. (Doc. 570 at 2). Chavez's failure to object to the PSR on this basis refutes his noted averment that counsel told him the plea agreement's non-binding guideline estimate would control following trial. (Compare Doc. 770 at 3 with Doc. 570 at 2).

Though Chavez suggests "the damage had already been done" by the time the PSR was corrected (*see* Doc. 770 at 9-10), in doing so he simply revisits his meritless allegations relating to the plea process. (*See* section IV A 2, ante). Chavez was not sentenced based upon any erroneous enhancements and the cases he points to are distinguishable. (*See* Doc. 770 at 9, citing *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004) (evidentiary hearing granted on claimed ineffective assistance where defendant taking narcotic painkillers at time of plea), *United States v. Tucker*, 479 Fed. Appx. 799 (9th Cir. 2012)[2] Unpublished (district court had discretion to vary downward from the child pornography guidelines on policy grounds). Any argument that the 250 month sentence exceed the unaccepted plea agreement's estimated sentencing guideline range does not show prejudice under the *Strickland* standard. (*See* section IV A 2, ante; *cf*. Doc. 770 at 10).

Additionally, Chavez's asserted procedural and substantive sentencing errors were rejected on appeal. (Doc. 649; *see also* Doc. 701 at 7-8; Doc. 722 at 4, 13-14). The Ninth Circuit panel found the sentencing Court correctly sustained counsel's objection to the PSR's errant guideline calculation based upon an improper finding of career offender status and thereupon upheld the within the guidelines sentence of 250 months. The panel also found the sentencing Court properly responded to all of counsel's objections to the PSR including as required by Rule 32 of the Federal Rules of Civil Procedure, and that the corrected 250-month sentence otherwise was substantively and procedurally proper. (Doc. 649).

---

[2] Chavez cites to *United States v. Tucker*, 716 F.3d 1001, 1007 (9th Cir. 2013). This case cannot be located. If he means to cite to *United States v. Tucker*, 716 F.3d 576 (9th Cir. 1983), *Tucker* relates to claims of trial errors, not errors at sentencing related to enhancements.

It follows that even if counsel was deficient as alleged, Chavez has not shown a reasonable probability of a difference sentencing outcome. The Circuit panel's affirmance of the sentence is binding as law of the case. *See United States v. Israel Washington*, 2024 WL 4753760, at *2 (E.D. Cal. Nov. 12, 2024), *report and recommendation adopted sub nom. United States v. Washington*, 2025 WL 1359075 (E.D. Cal. May 9, 2025), *certificate of appealability denied*, 2025 WL 4768700 (9th Cir. Dec. 4, 2025) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").

**2. Downward Variance based on Methamphetamine Policy Disparity**

Chavez claims that counsel failed reasonably to argue for a policy disagreement with the Sentencing Commission whereunder the sentencing Court would apply the more favorable sentencing guidelines based upon a mixture containing methamphetamine mixture rather than the more severe PSR proposed guidelines based upon actual methamphetamine. The Court finds that Chavez's asserted error is unsupported by facts and authority and refuted by counsel's habeas declaration and the record supporting counsel's declaration.

The policy disagreement Chavez advocates relates to the methamphetamine guidelines disparity between mixtures containing methamphetamine and pure methamphetamine whereunder pure methamphetamine is viewed as more culpable. (*See* Doc. 701 at 7; Doc. 722 at 12-14 & n.11, citing *United States v. Celestin*, 2023 WL 2018004, at *4 (E.D. La. Feb.15, 2023), *United States v. Nawanna*, 321 F. Supp. 3d 943, 951 (N.D. Iowa 2018).) As noted, the government's expert chemist testified the seized powder admitted at trial weighed 113.1 grams and was 100% pure methamphetamine. (Doc. 573 at 14-15). Chavez was sentenced at an offense level of 30 based on 113.1 grams of actual methamphetamine with a converted drug weight of 2,262 kg. (Sealed Doc. 513 at 15). The sentencing guidelines' 10 to 1 ratio for pure methamphetamine was applied to Chavez. (Sealed Doc. 513 at 15).

Chavez is not incorrect in arguing that some district courts including this Court have declined to follow actual methamphetamine guidelines based on the noted policy disagreement and the facts and circumstances presented in those cases. *See e.g., United States v. Carrillo*, 440 F. Supp. 3d 1148

(E.D. Cal. 2020) [collecting cases] (a non-IAC case varying downward based upon a policy disagreement with the methamphetamine guidelines); *see also United States v. Rodriguez*, 382 F. Supp. 3d 892, 895 (D. Alaska 2019) ("[S]entencing judges may impose sentences that vary from the guidelines range based on a policy disagreement with the guidelines."). However, Chavez has not pointed to any authority that a failure to raise this methamphetamine guidelines disparity constitutes IAC. *See Rocha-Chacon v. United States*, 2020 WL 1065871, at *3 (D. Ariz. Mar. 5, 2020) ("Movant does not cite, nor has the Court found, any authority requiring defense counsel to argue, or the Court to consider, the possibility of a policy disagreement with the Sentencing Guidelines [regarding mixture rather than ice]."). Particularly so here, where Chavez's leadership role demonstrates the same incremental culpability that drives the sentencing guidelines' methamphetamine disparity.

As noted, counsel lodged numerous objections to the PSR including as to offense level and criminal history, and requested a lower sentencing guideline range. (*See* section IV C 1, ante). Counsel also argued the § 3553 factors for a downward variance. (*Id*.). These objections and arguments relate to Chavez's culpability on the facts and circumstances of the case and find support in controlling authority. Chavez has not overcome counsel's presumed competence on the facts and circumstances of this case. *See Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (the petitioner "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy"); *Strickland*, 466 U.S. at 690 ("Reasonable tactical decisions, including decisions regarding presentation of the case, are "virtually unchallengeable."). Counsel's failure to address in his habeas declaration Chavez's methamphetamine policy disparity allegation is not alone a basis upon which to find counsel's conduct was not strategic. (*Id.*).

In any event, a claim of prejudice raised by this allegedly deficient conduct is merely speculative. The sentencing Court was under no obligation to vary downward based on any methamphetamine policy disparity argument. *See Borges v. United States*, 2026 WL 1180082, at *10 (D. Haw. Apr. 30, 2026) (citing *United States v. Carper*, 659 F.3d 923, 925 (9th Cir. 2011)) ("The District Court was under no obligation to vary from the guidelines based on the policy argument."); *see also United States v. Croskery,* 2025 WL 2402895, at *12 (D. Haw. Aug. 19, 2025) (citing

*Spears v. United States*, 555 U.S. 261, 264 (2009), United States v. Mitchell, 624 F.3d 1023, 1030 (9th Cir. 2010)) ("[A]lthough district courts certainly have the authority to vary from the [methamphetamine] Guidelines based on a policy disagreement with them, they are never required to do so."); *United States v. Kinoshita*, 2025 WL 2848600, at *1 (9th Cir. Oct. 8, 2025) ("We decline to hold that the methamphetamine guidelines are categorically unreasonable.").

**3. Downward Variance based on Mitigating Factors**

Chavez claims that counsel failed reasonably to present mitigating evidence and argue for downward departure. (Doc. 701 at 7; Doc. 722 at 13-14). However, Chavez has failed entirely to develop the claim with requisite details. (*See Id*.). The noted record reflects that counsel consistently objected and argued for mitigation, downward departure, and a below the guideline sentence. For example, counsel argued an overstated and non-violent criminal history; the § 3353 factors applied to Chavez's history and characteristics; and sentencing disparity with co-defendants. (*See* Doc. 522 at 7-9 internal pagination). Notably, the probation officer found no basis for downward departure or sentencing below the guidelines. (*See* Sealed Doc. 513 at 14, 17, 31-32).

Additionally, Chavez has not pointed to facts of prejudice under the *Strickland* standard, that absent counsel's allegedly deficient conduct there is a reasonable probability of a more favorable outcome. Chavez does not identify unpresented mitigating evidence. The Ninth Circuit found no substantive sentencing error. Chavez's cumulative error argument necessarily fails given the absence of individual error. (*See* Doc. 770 at 9-10); *Jose Jesus Carbajal*, 2026 WL 2409987, at *10.

**D. Evidentiary Hearing**

Chavez requests an evidentiary hearing. (Doc. 722 at 14-15; Doc. 770 at 11-14). Chavez asserts that a hearing is warranted given the colorable claims in issue and the need to hear from counsel regarding his allegedly deficient conduct. (*Id*.).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *see also United States v. Jaramillo*, 2025 WL 2462728, at *20 (E.D. Cal. 2025) (same). The court may deny a hearing if the movant's allegations, viewed against

the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *Rodriguez*, 49 F.4th at 1213 (same). To earn the right to a hearing, the movant must make specific factual allegations which, if true, would entitle him to relief. *McMullen*, 98 F.3d at 1159. "The Ninth Circuit's rule is that merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

Therefore, a § 2255 motion does not automatically entitle a movant to a hearing if the issues can be conclusively decided on the basis of the evidence in the motion, files, and records. *Blackledge v. Allison,* 431 U.S. 63, 80-82 (1977); 28 U.S.C. § 2255(b); *see also United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Habeas Rule 8(a) (the court must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Habeas Rule 7 to determine whether an evidentiary hearing is warranted); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (§ 2255 hearing is required unless the motion, files, and records conclusively show movant is not entitled to relief). The district court exercises its discretion and common sense in determining whether a hearing is necessary. *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v. Martinez*, 475 F. Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a motion to vacate without a hearing where the case records demonstrate the movant's claims lack merit).

Here, Chavez is not entitled to a § 2255 hearing because his claims are not cognizable, palpably incredible, and subject to dismissal. United States v. *Peterson*, 2025 WL 2780042, at *13 (E.D. Cal. Sept. 30, 2025) (movant is not entitled to a § 2255 hearing because his claims are not a basis for relief). The § 2255 motion may be denied as a matter of law, without a hearing. *Cf. United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying prejudice to overcome procedural default); *Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice"). Chavez's "mere conclusory allegations do not warrant an evidentiary hearing." *See Shah*, 878 F.2d at

1161; *United States v. Brock*, 2019 WL 1455327, at *3 (E.D. Cal. Apr. 2, 2019), *report and recommendation adopted*, 2019 WL 2185190 (E.D. Cal. May 21, 2019) (citing U.S. v. *Burrows*, 872 F.2d 915, 917 (9th Cir. 1989)) (when a § 2255 movant raises a claim of ineffective assistance of counsel, the court should hold an evidentiary hearing unless "something in the record conclusively shows that [movant's] trial attorney was not ineffective.").

To the extent Chavez contends that he needs to hear from counsel regarding his allegedly deficient conduct (*see* Doc. 722 at 14-15), Chavez has not responded to counsel's habeas declaration notwithstanding the opportunity to do so. (*See* docket). Therefore, the Court finds that an oral hearing on the § 2255 motion is not necessary.

**E. Certificate of Appealability**

Pursuant to Habeas Rule 11, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." SECT 2255 Rule 11(a). A court may issue a certificate of appealability where the moving party has made a substantial showing of the denial of a constitutional right, and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The Court finds that Chavez has not made a substantial showing of the denial of a constitutional right, for the reasons stated. Furthermore, based on the foregoing, Chavez cannot show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong, or that jurists of reason would find it debatable whether the § 2255 motion states a valid claim of the denial of a constitutional right and the Court was correct in its procedural rulings. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

## V. CONCLUSIONS

The Court observes that a *pro se* litigant's "pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys." *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, a "liberal construction" does not permit the Court to ignore "an obvious failure to allege facts that set forth a cognizable claim." *United States v. Caputo*, 2023 WL 5207318, at *3 (*citing James*, 24 F.3d at 26). "Conclusory allegations which are not supported by a

statement of specific facts do not warrant habeas relief." *Id.*

The court concludes that Chavez's Grounds One, Two, and Three asserting ineffective assistance of counsel clearly lack merit and are factually unsupported in and refuted by the record. The Court finds no basis upon which it could conclude that counsel provided Chavez with prejudicially deficient representation.

The Court concludes that Chavez has failed to state a claim for relief under 28 U.S.C. § 2255. Chavez is not entitled to an oral hearing on the § 2255 motion. Chavez is not entitled to a certificate of appealability.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The § 2255 motion (Docs. 701 & 722) is **DENIED**.
2. A certificate of appealability **SHALL NOT** issue.
3. The Clerk of the Court is directed to enter JUDGMENT FOR PLAINTIFF and CLOSE THE CASE.

IT IS SO ORDERED.

Dated: October 26, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE